UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

03-60244 CR-ZLOCH MAGISTRATE JUDGE SNOW

CASE NO. ____________

18 U.S.C. 371
18 U.S.C. 1341
18 U.S.C. 1343
18 U.S.C. 1956(h)
18 U.S.C. 1956(a)(1)(A)(i) and (B)(i)
18 U.S.C. 1956(a)(2)(A) and (B)(i)

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOHN PORCARO,
FRANCINE LEONE,
SCOTT AMSTER,
ALLAN STEVEN ADER,
STEVEN GOLDSTEIN and
GREGORY R. SWARN,

Defendants.

FILED by D.C. OCT 21 2003

**INDICTMENT**

The Grand Jury charges that:

**GENERAL ALLEGATIONS**

At all times material to this Indictment:

1. Trump Financial Group, Inc. (hereinafter "Trump") and The Sheffield Group Corporation (hereinafter "Sheffield") were Florida corporations doing business as telemarketing firms ostensibly engaged in the business of obtaining money from investors and arranging for the investors' money to be invested in options to buy and sell foreign currency in the interbank or foreign exchange markets. Investors were advised that they could make profits based upon the rise and fall of the value of foreign currencies in

relation to the value of the United States dollar.

2. The interbank or foreign exchange market (hereinafter "FOREX market") consists of the trading of foreign currency contracts and/or options between banks and other large financial institutions.

3. Trump and Sheffield employed sales agents, loaders and managers. Sales agents contacted potential customers by telephone attempting to entice them with a purportedly lucrative investment opportunity. The sales agent would make an initial sales presentation, usually reading from a prepared written script or "pitch," and give a brief explanation of the purported investment opportunity.

4. A more experienced and persuasive sales agent, commonly known as a "loader," would speak to potential investors over the telephone after the sales agent had made his/her pitch. The loader would use his skills of persuasion to induce potential investors to purportedly invest their money and subsequently induce the investors to send additional money for larger purported investments.

5. The manager supervised the employees, including the sales agents and loaders.

6. From approximately December 1997 until approximately June 13, 1998, defendant JOHN PORCARO and co-conspirator Michael Pontorno owned, controlled and operated Trump, which was located

at 19070 and 19028 N.E. 29th Avenue, Aventura, Florida. Subsequently, Michael Pontorno assumed sole ownership and control of Trump until it closed in approximately August 1998.

7. Defendant FRANCINE LEONE worked at Trump from approximately March 1998 until it closed in approximately August 1998. During that time, she participated in recruiting, hiring, training and supervising individuals to work the telemarketing operations at Trump.

8. From approximately March 1998 through approximately August 1998, defendant SCOTT AMSTER was employed as a manager and loader at Trump.

9. From approximately March 1998 through approximately August 1998, defendants ALLAN STEVEN ADER and STEVEN GOLDSTEIN were employed as loaders at Trump.

10. From approximately June 1998 through approximately August 1998, defendant GREGORY R. SWARN was employed as a sales agent at Trump.

11. In approximately August 1998, Trump closed and Sheffield opened. Co-conspirators Michael J. Pontorno and Roseann Pontorno (hereinafter collectively referred to as "the Pontornos")and defendant FRANCINE LEONE owned, controlled and operated Sheffield, which was located at 1920 East Hallandale Beach Boulevard, Suite 901, Hallandale, Florida. Defendants LEONE, AMSTER, SWARN, GOLDSTEIN and, after a brief respite, ADER continued working in

the same or similar capacities at Sheffield. In the fall of 1998, SWARN became a manager at, and part-owner of, Sheffield.

**COUNT 1**

**Conspiracy to Commit Wire & Mail Fraud**

12. The General Allegations set forth above in paragraphs numbered one (1) through eleven (11) of this Indictment are re-alleged and expressly incorporated herein as if set out in full.

13. Beginning in or about November 1997, the exact date unknown to the Grand Jury, and continuing to and including in or about January 1999, in the Southern District of Florida, and elsewhere, defendants,

JOHN PORCARO,
FRANCINE LEONE,
SCOTT AMSTER,
ALLAN STEVEN ADER,
STEVEN GOLDSTEIN and
GREGORY R. SWARN,

knowingly and willfully combined, conspired, confederated and agreed, with one another, and with the Pontornos, and with other persons known and unknown to the Grand Jury, to commit offenses against the United States, that is, to devise and intend to devise a scheme and artifice to defraud, and for obtaining money from hundreds of people throughout the United States, by means of false and fraudulent pretenses, representations and promises and, in so doing, (a) knowingly caused to be transmitted by means of wire communications in interstate and foreign commerce, certain signs, signals, and sounds, in violation of Title 18, United States Code,

Section 1343 (Wire Fraud) and (b) knowingly caused to be delivered by mail and by commercial interstate carrier according to the directions thereon, certain matters and things, in violation of Title 18, United States Code, Section 1341 (Mail Fraud).

**OBJECT OF THE CONSPIRACY**

14. It was the object of the conspiracy that the defendants, having devised and intending to devise a scheme and artifice to defraud, would obtain money from investors seeking to invest in options to buy and sell foreign currency in the FOREX market and would convert the investors' money to their own use and benefit, and to the use and benefit of others.

**MANNER AND MEANS OF THE CONSPIRACY**

15. The manner and means by which the defendants and their co-conspirators sought to accomplish the object of the conspiracy included, among others, the following:

A. It was part of the scheme and artifice to defraud that defendants JOHN PORCARO, FRANCINE LEONE and the Pontornos recruited, hired, trained, and/or caused the recruitment, hiring and training of, numerous sales agents who, along with the loaders working out of Trump's and Sheffield's offices, solicited investors throughout the United States to invest in Trump's and Sheffield's FOREX investment program.

B. It was further part of the scheme and artifice to defraud that defendants JOHN PORCARO, FRANCINE LEONE and the

Pontornos provided sales agents for Trump and Sheffield with "lead lists" of prospective investors' names, telephone numbers and addresses that were obtained from various sources, including, but not limited to, responses to television, radio and newspaper advertisements.

C. It was further part of the scheme and artifice to defraud that defendants JOHN PORCARO, FRANCINE LEONE and the Pontornos prepared and/or obtained from various sources, and/or caused the preparation and/or the acquisition of, telephone scripts which they provided to Trump's and Sheffield's sales agents to use during investor solicitations.

D. It was further part of the scheme and artifice to defraud that defendants JOHN PORCARO, FRANCINE LEONE and the Pontornos caused sales agents and/or loaders for Trump and Sheffield, including but not limited to defendants AMSTER, ADER, GOLDSTEIN and SWARN, to utilize the "lead lists" to make numerous telephone calls to prospective investors throughout the United States. These sales agents and/or loaders introduced Trump and Sheffield to prospective investors by making false representations about the FOREX investment program, with an emphasis on the probability of realizing large profits through these investments.

E. It was further part of the scheme and artifice to defraud that in order to induce prospective investors to invest in Trump's and Sheffield's FOREX investment program, the defendants

provided, and/or caused sales agents to provide, to prospective investors, offering brochures, sales materials, other documents, including advertisements, and oral representations containing numerous materially false statements and omissions of material facts including, but not limited to the following:

**Materially False Statements**

(1) that Trump's and/or Sheffield's investor funds were invested in the FOREX market, when, in truth and in fact, investor funds were rarely, if ever, invested in the FOREX market;

(2) that Trump's and/or Sheffield's FOREX investment program limited risk, when, in truth and in fact, no precautions were taken to limit the risk of investor funds;

(3) that Trump's and/or Sheffield's FOREX investment program could return $70,000.00 in just 2 weeks when properly positioned based upon a $10,000.00 investment, when, in truth and in fact, Trump's and/or Sheffield's investors rarely, if ever, received any profit on their investments, let alone a 700% increase in two weeks;

(4) that Trump's and/or Sheffield's FOREX investment program provided investors with maximum liquidity enabling investors to always being able to liquidate their positions, when, in truth and in fact, investors, with rare exception, were not permitted to liquidate their positions in order to

realize any profits;

**Omissions of Material Facts**

(5) that Trump and/or Sheffield had incurred substantial losses in its FOREX market investments on behalf of their investors;

(6) that the majority of Trump and/or Sheffield investors lost their entire investments;

(7) that Trump and/or Sheffield were insufficiently capitalized in the event that multiple investors elected to liquidate their foreign currency futures contracts when the trading prices for those contracts exceeded the strike prices; and

(8) that expired option monies were kept by Trump and/or Sheffield.

F. It was further part of the scheme and artifice to defraud that individuals willing to make an investment with Trump and/or Sheffield were directed by the defendants and/or other employees to send funds to Trump and Sheffield immediately, generally by means of an overnight mail delivery service with which Trump and Sheffield had an account.

G. It was further part of the scheme and artifice to defraud that individuals who invested in Trump's and Sheffield's FOREX investment program were usually re-contacted by the defendants and/or other employees in an effort to induce investors

to make additional investments, and thus send more money to Trump and/or Sheffield.

H. It was further part of the scheme and artifice to defraud that defendant JOHN PORCARO and Michael J. Pontorno used, and/or aided and abetted the use of, the following overseas bank accounts to transfer proceeds of Trump's victims in order to conceal the location, source, ownership and control of said proceeds and to promote the carrying on of the above-mentioned scheme to defraud, to wit:

| **Date opened** | **Bank Name** | **Bank Location** | **Acct. Name & number** |
|---|---|---|---|
| 5/15/98 | British American Bank, Ltd. | Cayman Islands | Shields Worldwide, Ltd. 015-11-112050-00 |
| 5/15/98 | Cayman National Bank | Cayman Islands | Shields Worldwide, Ltd. 66073 |

J. It was further part of the scheme and artifice to defraud that defendants FRANCINE LEONE, GREGORY R. SWARN and Michael J. Pontorno used, and/or aided and abetted the use of, the following overseas bank account to transfer proceeds of Sheffield's victims in order to conceal the location, source, ownership and control of said proceeds and to promote the carrying on of the above-mentioned scheme to defraud, to wit:

| **Date opened** | **Bank Name** | **Bank Location** | **Acct. Name & number** |
|---|---|---|---|
| 9/1/98 | British American Bank, Ltd. | Cayman Islands | Forex Market, Ltd. 015-11-112142-00 |

**OVERT ACTS**

16. In furtherance of the conspiracy and to achieve the object thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

A. On or about May 15, 1998, defendant JOHN PORCARO traveled to the Cayman Islands and signed several documents which established a bank account at British American Bank Ltd. on behalf of "Shields Worldwide, Ltd." a Cayman Islands registered corporation.

B. In or about May 1998, defendant ALLAN STEVEN ADER communicated with David Earl Garson of Albuquerque, New Mexico via interstate telephone calls.

C. In or about June 1998, defendant STEVEN GOLDSTEIN communicated with Richard Ernest Anderson of Baltimore, Maryland via interstate telephone calls.

D. In or about September 1998, defendant SCOTT AMSTER communicated with Sibi J. Kottaram of East Lansing, Michigan via interstate telephone calls.

E. On or about July 24, 1998, defendant FRANCINE LEONE caused account number 2090001718464 in the name of The Sheffield Group Corporation to be opened at First Union National Bank in Aventura, Florida.

F. On or about August 18, 1998, defendant FRANCINE LEONE

caused account number 2090001718299 in the name of The Sheffield Group Corporation to be opened at First Union National Bank in Aventura, Florida.

G. On or about November 5, 1998, defendant GREGORY R. SWARN became a signatory on the Forex Market Ltd. bank account at British American Bank in the Cayman Islands.

H. On or about November 15, 1998, defendant GREGORY R. SWARN replaced Michael J. Pontorno as the Director, President and Secretary of Forex Market, Ltd. a corporation registered in the Cayman Islands.

I. On or about November 18, 1998, defendants FRANCINE LEONE and GREGORY R. SWARN agreed to purchase all of the outstanding capital stock of Forex Market Ltd. from Michael J. Pontorno.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 2 - 6**

**Wire Fraud**

1. The General Allegations set forth above in paragraphs numbered one (1) through eleven (11), and those allegations set forth in Paragraphs 15(A) through 15(J) of Count 1 of this Indictment, are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the approximate dates enumerated as to each count, at Hallandale, Broward County, in the Southern District of Florida, and elsewhere, the defendants, as described in each count

below, having devised a scheme or artifice to defraud and for obtaining money and property by false and fraudulent pretenses, representations and promises, and attempting to do so, for the purpose of executing such scheme or artifice or attempting to do so did knowingly and willfully transmit and cause to be transmitted in interstate commerce by means of wire communications certain signals and sounds, as more particularly described below:

| COUNT | DATE | DEFENDANTS | WIRE COMMUNICATION |
|---|---|---|---|
| 2 | 11/10/98 | FRANCINE LEONE<br>ALLAN STEVEN ADER | Telephone call between defendant ADER in Hallandale, Florida and Chris Minor in Abernathy, Texas. |
| 3 | 11/18/98 | FRANCINE LEONE<br>GREGORY R. SWARN<br>STEVEN GOLDSTEIN | Telephone call between defendant GOLDSTEIN in Hallandale, Florida and Tom Kixmueller in Linn, Missouri. |
| 4 | 11/19/98 | FRANCINE LEONE<br>GREGORY R. SWARN<br>ALLAN STEVEN ADER | Telephone call between defendant ADER in Hallandale, Florida and Chris Minor in Abernathy, Texas. |
| 5 | 12/01/98 | FRANCINE LEONE<br>GREGORY R. SWARN<br>ALLAN STEVEN ADER | Telephone call between defendant ADER in Hallandale, Florida and Arthur A. Smith in Baton Rouge, Louisiana. |
| 6 | 12/07/98 | FRANCINE LEONE<br>GREGORY R. SWARN<br>ALLAN STEVEN ADER | Telephone call between defendant ADER in Hallandale, Florida and Arthur A. Smith in Baton Rouge, Louisiana. |

In violation of Title 18, United States Code, Sections 1343 and 2.

**COUNTS 7 - 14**

**Mail Fraud**

1. The General Allegations set forth above in paragraphs numbered one (1) through eleven (11), and those allegations set forth in Paragraphs 15(A) through 15(J) of Count 1 of this Indictment, are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the approximate dates enumerated as to each count, at Hallandale, Broward County, in the Southern District of Florida, and elsewhere, the defendants, as described in each count below, having devised a scheme or artifice to defraud and for obtaining money and property by false and fraudulent pretenses, representations and promises, and attempting to do so, for the purpose of executing such scheme or artifice or attempting to do so did knowingly and willfully use the United States Postal Service and any commercial interstate carrier by mailing, and causing to be mailed, some matter or thing, as more particularly described below:

| COUNT | DATE | DEFENDANTS | CAUSING TO BE MAILED TO SHEFFIELD |
|---|---|---|---|
| 7 | 10/23/98 | FRANCINE LEONE<br>ALLAN STEVEN ADER | Check no. 3042 in the amount of $5,000 from Chris Minor in Abernathy, Texas to Hallandale, Florida. |

| | | | |
|---|---|---|---|
| 8 | 10/26/98 | FRANCINE LEONE<br>ALLAN STEVEN ADER | Check no. 3048 in the amount of $9,625 from Chris Minor in Abernathy, Texas to Hallandale, Florida. |
| 9 | 10/29/98 | FRANCINE LEONE<br>ALLAN STEVEN ADER | Check no. 3050 in the amount of $8,625 from Chris Minor in Abernathy, Texas to Hallandale, Florida. |
| 10 | 11/10/98 | FRANCINE LEONE<br>ALLAN STEVEN ADER | Check no. 3086 in the amount of $4,500 from Chris Minor in Abernathy, Texas to Hallandale, Florida. |
| 11 | 11/18/98 | FRANCINE LEONE<br>GREGORY R. SWARN<br>STEVEN GOLDSTEIN | Check no. 1618 in the amount of $3,000 from Tom Kixmueller in Linn, Missouri to Hallandale, Florida. |
| 12 | 11/19/98 | FRANCINE LEONE<br>GREGORY R. SWARN<br>ALLAN STEVEN ADER | Check no. 3108 in the amount of $5,000 from Chris Minor in Abernathy, Texas to Hallandale, Florida. |
| 13 | 12/01/98 | FRANCINE LEONE<br>GREGORY R. SWARN<br>ALLAN STEVEN ADER | Check in the amount of $10,000 from Arthur A. Smith in Baton Rouge, Louisiana to Hallandale, Florida. |
| 14 | 12/07/98 | FRANCINE LEONE<br>GREGORY R. SWARN<br>ALLAN STEVEN ADER | Check in the amount of $2,775 from Arthur A. Smith in Baton Rouge, Louisiana to Hallandale, Florida. |

In violation of Title 18, United States Code, Sections 1341 and 2.

**COUNT 15**

**Conspiracy to Commit Money Laundering - Promotion and Concealment**

1. The General Allegations set forth above in paragraphs numbered one (1) through eleven (11) of this Indictment are re-

alleged and incorporated by reference as though fully set forth herein.

2. From in or about ~~January~~ February 1998, and continuously thereafter up to and including approximately ~~June~~ January 1999, in the Southern District of Florida, and elsewhere, the defendants,

JOHN PORCARO,
FRANCINE LEONE
and
GREGORY R. SWARN,

did knowingly combine, conspire, confederate and agree, with one another and with other persons both known and unknown to the Grand Jury, to commit offenses against the United States, that is, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, and which transactions in fact involved the proceeds of specified unlawful activity, that is, mail fraud and/or wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343; and with the intent to promote the carrying on of such specified unlawful activity and knowing that the transactions were designed in whole and in part to conceal and disguise, the nature, location, source, ownership and control of the proceeds of such specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i)and 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section

1956(h).

**COUNTS 16 - 20**

**Money Laundering - Outside the U.S. -**
**Promotion and Concealment**

1. The General Allegations set forth above in paragraphs numbered one (1) through eleven (11) of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida and elsewhere, defendants,

FRANCINE LEONE
and
GREGORY R. SWARN,

and other persons known and unknown to the Grand Jury did knowingly transport, transmit and transfer, and attempt to transport, transmit and transfer, funds, that is, United States funds, from a place in the United States to and through a place outside the United States (a) with intent to promote the carrying on of specified unlawful activity, that is mail fraud and/or wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, and (b) knowing that the funds involved in the transportation, transmission and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission and transfer was designed in whole

and in part to conceal and disguise, the nature, location, source, ownership and control of the proceeds of such specified unlawful activity, that is, mail fraud and/or wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, each transaction constituting a separate Count of the Indictment:

| **COUNT** | **DEFENDANT** | **DATE** | **AMOUNT** | **FROM A PLACE IN THE U.S. TO A PLACE OUTSIDE THE U.S.** |
|---|---|---|---|---|
| 16 | FRANCINE LEONE | 10/27/98 | $40,000 | First Union Nat. Bank in Aventura, Florida acct. no. 2090001718299 in the name of Sheffield to acct. no. 015-11-112142-00 in the name of Forex Market Ltd. at British American Bank in the Cayman Islands. |
| 17 | FRANCINE LEONE GREGORY R. SWARN | 11/06/98 | $90,000 | First Union Nat. Bank in Aventura, Florida acct. no. 2090001718299 in the name of Sheffield to acct. no. 015-11-112142-00 in the name of Forex Market Ltd. at British American Bank in the Cayman Islands. |
| 18 | FRANCINE LEONE GREGORY R. SWARN | 11/13/98 | $55,000 | First Union Nat. Bank in Aventura, Florida acct. no. 2090001718299 in the name of Sheffield to acct. no. 015-11-112142-00 in the name of Forex Market Ltd. at British American Bank in the Cayman Islands. |

| | | | | |
|---|---|---|---|---|
| 19 | FRANCINE LEONE GREGORY R. SWARN | 11/20/98 | $45,000 | First Union Nat. Bank in Aventura, Florida acct. no. 2090001718299 in the name of Sheffield to acct. no. 015-11-112142-00 in the name of Forex Market Ltd. at British American Bank in the Cayman Islands. |
| 20 | FRANCINE LEONE GREGORY R. SWARN | 12/04/98 | $65,000 | First Union Nat. Bank in Aventura, Florida acct. no. 2090001718299 in the name of Sheffield to acct. no. 015-11-112142-00 in the name of Forex Market Ltd. at British American Bank in the Cayman Islands. |

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A), 1956(a)(2)(B)(i), and 2.

**COUNT 21**

**Money Laundering - Concealment**

1. The General Allegations set forth above in paragraphs numbered one (1) through eleven (11) of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about December 15, 1998, in the Southern District of Florida and elsewhere, defendant,

FRANCINE LEONE,

knowingly conducted and attempted to conduct a financial transaction affecting interstate and foreign commerce, to wit, the

withdrawal of $80,000 from "The Sheffield Group Corporation" acct. no. 2090001718299 at First Union National Bank in Aventura, Florida, knowing that the property involved in this transaction represented the proceeds of some form of unlawful activity and which financial transaction did in fact involve the proceeds of specified unlawful activity, that is, mail fraud and/or wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership and control of the proceeds of such specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

**CRIMINAL FORFEITURE**

1. The General Allegations portion of this Indictment is re-alleged and incorporated herein by reference.

2. As a result of the violations of Title 18, United States Code, Sections 371, 1341, 1343 and 1956 set forth in this Indictment, defendants,

JOHN PORCARO,
FRANCINE LEONE,
SCOTT AMSTER,
ALLAN STEVEN ADER,
STEVEN GOLDSTEIN and
GREGORY R. SWARN,

shall forfeit to the United States of America any property, real and personal, involved in the offense(s) and any property traceable to such property. All pursuant to Title 18, United States Code, Sections 982(a)(1), 982(a)(2)(A) and 982(a)(8).

3. Such forfeitures shall include, but are not limited to the sum of approximately $5,700,000.00 which:

(a) represents property constituting, or derived from, proceeds obtained directly or indirectly as a result of mail and wire fraud affecting a financial institution as set forth in Counts 2 through 14 of this Indictment; and

(b) constitutes money involved in money laundering as set forth in Counts 15 through 21 of this Indictment, or constitutes property which is traceable to such money; and

(c) constitutes money derived from, or traceable to, the gross proceeds that the defendants obtained directly or indirectly as a result of mail and wire fraud involving telemarketing as set forth in Counts 1 through 14 of this Indictment.

4. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;
(b) has been transferred, or sold to, or deposited with a third party;
(c) has been placed beyond the jurisdiction of the Court;
(d) has been substantially diminished in value; or
(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of any other property of defendant up to the value of the above-described forfeitable property, pursuant to Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

MARCOS D. JIMENEZ
UNITED STATES ATTORNEY

JEFFREY H. SLOMAN
ASSISTANT UNITED STATES ATTORNEY

LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA** **CASE NO.** ______________________

**vs.** **CERTIFICATE OF TRIAL ATTORNEY***

**JOHN PORCARO, et al.**
**Defendant.**
______________________/

**Superseding Case Information:**

New Defendant(s) Yes ___ No ___
Number of New Defendants ___
Total number of counts ___

**Court Division:** (Select One)

___ Miami ___ Key West
_X_ FTL ___ WPB ___ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) __No__
List language and/or dialect ______________________

4. This case will take __8__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

| (Check only one) | | | (Check only one) | |
|---|---|---|---|---|
| I | 0 to 5 days | ___ | Petty | ___ |
| II | 6 to 10 days | _X_ | Minor | ___ |
| III | 11 to 20 days | ___ | Misdem. | ___ |
| IV | 21 to 60 days | ___ | Felony | _X_ |
| V | 61 days and over | ___ | | |

6. Has this case been previously filed in this District Court? (Yes or No) __No__
If yes:
Judge: ______________ Case No. ______________
(Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) __No__
If yes:
Magistrate Case No. ______________
Related Miscellaneous numbers: ______________
Defendant(s) in federal custody as of ______________
Defendant(s) in state custody as of ______________
Rule 20 from the ______________ District of ______________

Is this a potential death penalty case? (Yes or No) __No__

7. Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003? _X_ Yes ___ No

8. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? _X_ Yes ___ No
If yes, was it pending in the Central Region? _X_ Yes ___ No

9. Did this case originate in the Narcotics Section, Miami? ___ Yes _X_ No

Jeffrey H. Sloman
Assistant United States Attorney
Florida Bar No. 378879

Lawrence D. LaVecchio
Assistant United States Attorney
Florida Bar No. 305405

*Penalty Sheet(s) attached

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: JOHN PORCARO

Count #: 1 18 U.S.C. 371 Conspiracy to Commit Wire & Mail Fraud

*Max. Penalty: 5 years' imprisonment - $250,000 fine; supervised release term of not more than three years

Count #:15 18 U.S.C. 1956(h) Conspiracy to Commit Money Laundering

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction; supervised release term of not more than five years

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: FRANCINE LEONE

Count #: 1 18 U.S.C. 371 Conspiracy to Commit Wire & Mail Fraud

*Max. Penalty: 5 years' imprisonment - $250,000 fine; supervised release term of not more than three years

Counts #: 2-6 18 U.S.C. 1343 Wire Fraud

*Max. Penalty: 20 years' imprisonment - $250,000 fine; supervised release term of not more than five years

Counts #: 7-14 18 U.S.C. 1341 Mail Fraud

*Max. Penalty: 20 years' imprisonment - $250,000 fine; supervised release term of not more than five years

Count #: 15 18 U.S.C. 1956(h) Conspiracy to Commit Money Laundering

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction; supervised release term of not more than five years

Counts #: 16-21 18 U.S.C. 1956 Money Laundering

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction; supervised release term of not more than five years

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: SCOTT AMSTER

Count #: 1 18 U.S.C. 371 Conspiracy to Commit Wire & Mail Fraud

*Max. Penalty: 5 years' imprisonment - $250,000 fine; supervised release term of not more than three years

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: ALLAN STEVEN ADER

Count #: 1 18 U.S.C. 371 Conspiracy to Commit Wire & Mail Fraud

*Max. Penalty: 5 years' imprisonment - $250,000 fine; supervised release term of not more than three years;

Counts #: 2, 4-6 18 U.S.C. 1343 Wire Fraud

*Max. Penalty: 20 years' imprisonment - $250,000 fine; supervised release term of not more than five years

Counts #: 7-10, 12-14 18 U.S.C. 1341 Mail Fraud

*Max. Penalty: 20 years' imprisonment - $250,000 fine; supervised release term of not more than five years

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: STEVEN GOLDSTEIN

Count #: 1 18 U.S.C. 371 Conspiracy to Commit Wire & Mail Fraud

*Max. Penalty: 5 years' imprisonment - $250,000 fine; supervised release term of not more than three years

Count #: 3 18 U.S.C. 1343 Wire Fraud

*Max. Penalty: 20 years' imprisonment - $250,000 fine; supervised release term of not more than five years

Counts #: 11 18 U.S.C. 1341 Mail Fraud

*Max. Penalty: 20 years' imprisonment - $250,000 fine; supervised release term of not more than five years

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: GREGORY R. SWARN

Count #: 1 18 U.S.C. 371 Conspiracy to Commit Wire & Mail Fraud

*Max. Penalty: 5 years' imprisonment - $250,000 fine; supervised release term of not more than three years

Counts #: 3-6 18 U.S.C. 1343 Wire Fraud

*Max. Penalty: 20 years' imprisonment - $250,000 fine; supervised release term of not more than five years

Counts #: 11-14 18 U.S.C. 1341 Mail Fraud

*Max. Penalty: 20 years' imprisonment - $250,000 fine; supervised release term of not more than five years

Count #: 15 18 U.S.C. 1956(h) Conspiracy to Commit Money Laundering

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction; supervised release term of not more than five years

Counts #: 17-20 18 U.S.C. 1956 Money Laundering

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction; supervised release term of not more than five years

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

***No.***

# *UNITED STATES DISTRICT COURT*

**Southern** District of **Florida**
Central Criminal Division

## *THE UNITED STATES OF AMERICA*

vs.

JOHN PORCARO,
FRANCINE LEONE,
SCOTT AMSTER,
ALLAN STEVEN ADER,
STEVEN GOLDSTEIN, and
GREGORY R. SWARN

## *INDICTMENT*

18 U.S.C. §371
18 U.S.C. §1341
18 U.S.C. §1343
18 U.S.C. §1956(h)
18 U.S.C. §1956

*A true bill.* [signature]

---------------------------------------- *Foreperson*

*Filed in open court this* --------------- *day,*

*of* --------------------------------- *A.D. 20* ------

---------------------------------------- *Clerk*

*Bail, $* ---------------------------